IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Wiley Y. Daniel**

Civil Action No. 06-cv-02294-WYD-MEH

BITUMINOUS CASUALTY CORPORATION,

    Plaintiff,

vs.

MONUMENT WELL SERVICES CO., ELIZABETH MOBALDI, AND STEVE MOBALDI,

    Defendants.

# ORDER

## I.    INTRODUCTION

THIS MATTER comes before the Court on Plaintiff's Motion for Summary Judgment (docket #22), filed April 6, 2007. At issue in this motion is whether Plaintiff Bituminous is required to defend and indemnify Defendant Monument Well in an underlying lawsuit filed by Defendants Elizabeth and Steve Mobaldi against Monument Well and others, Case No. 06-cv-6335 in the District Court for the City and County of Denver, Colorado. For the reasons stated below, Plaintiff's Motion for Summary Judgment is denied.

## II.    FACTUAL BACKGROUND

This case arises out of a civil action (the "underlying action") filed in the District Court for the City and County of Denver by Elizabeth and Steve Mobaldi (collectively referred to as "the Mobaldis") against CER Corporation, MacTec Inc., Sandia Corporation, Barrett Resources Corporation, Williams Production RMT Company,

Haliburton Energy Services, Monument Well Service Company, Rocky Mountain Wireline Service, the Superior Oil Company, and NICOR Drilling Company. Monument Well Service Company ("Defendant," or "Monument Well"), one of the Defendants in the underlying suit, has insurance policies with Bituminous Casualty Company ("Plaintiff," or "Bituminous"). In the case at hand, Bituminous is seeking to be relieved of any duty to defend Monument Well in the underlying suit on the basis of pollution exclusion provisions in the insurance policies.

The underlying Mobaldi Complaint states the following claims for relief: (1) Negligence, alleging that "CER, for its principals and through its agents" were negligent in performing "frac experiments" on wells in the vicinity of Mobaldis' property and in failing to prevent "fracing fluids or various constituents thereof" to enter into the aquifer and eventually into Mobaldis' well, causing "personal harm and loss of property value as a result thereof." (Compl. ¶¶ 35-41.) (2) Trespass/Nuisance, alleging that "CER, for its principals and through its agents," caused physical intrusions upon the Mobaldis' property that was unauthorized, causing "actual damage to the Plaintiffs personally and to their property." (Compl. ¶¶ 43-45.) (3) Strict liability, alleging that "CER, for its principals and through its agents" used certain "fracing techniques and non-conventional constituents within the fracing fluids, absent adequate controls, protective measures, and post operational testing, constituted an ultra-hazardous activity" which damaged the Plaintiffs. (Compl. ¶¶ 47-50.) (4) Negligent Misrepresentation, alleging the Mobaldis were injured when "representatives of some or all of the Defendants" "affirmatively [mis]represented to the Plaintiffs that their well had been tested and that

the water was safe for human consumption." (Compl. ¶¶ 51-52.)

Here, Defendant disputes whether the first three claims in the underlying lawsuit are brought against Monument Well, or against CER alone. (Def. Resp. in Opposition to Pls. Mot. for Summ. J. at 3-4.) Though I must take all facts in the light most favorable to the Defendant, the first three claims in the underlying lawsuit allege that "CER, for its principals and through its agents," caused harm to the Mobaldis. The Mobaldi Complaint identifies Monument Well as one of those agents. In the Complaint in the underlying action, the Mobaldis allege that Haliburton, Monument Well Service, Rocky Mountain Wireline, and Nicor were contractors who "acted as agents for CER and performed tasks in a manner requiring the use of independent judgment." (*Id.* at ¶¶ 14-15.) The Mobaldi Complaint alleges that Monument Well was hired by CER to perform "cement services" and defines "cementing a well" as "an operation usually performed by an oil field service company wherein cement is pumped down into the well and forced outside of the casing through perforations deliberately made in the casing; the cement is forced into the strata and between formations surrounding the well so as to create a seal or dam between water aquifers and oil and gas bearing sand." (*Id.* at ¶¶ 14, 17.) Thus, I find that Defendant Monument Well is at least implicated in the first three claims for relief in the underlying action. As I will explain further below, however, the fact that Monument Well is implicated in the first three claims will not necessarily absolve Bituminous of its duty to defend.

Defendant Monument Well has purchased several insurance policies from Bituminous over the last fifteen years. Specifically, Monument Well purchased a

Commercial General Liability Coverage Plan ("primary policy") with policies covering the periods of 3/19/92-3/19/93, 3/19/93-3/19/94, 3/19/94-3/19/95, 3/19/95-3/19/96, 3/19/96-3/19/97, 3/19/97-3/19/98, 3/19/98-3/19/99, and 3/19/99-3/19/00. All of the primary policies from 3/19/92-3/19/98 contained the following pollution exclusion:

> It is agreed that the exclusion relating to the actual, alleged, or threatened discharge, dispersal, release or escape of pollutants is replaced by the following:
> (1) **Bodily injury or property damage** arising out of the actual, alleged or threatened discharge, dispersal, release or escape of pollutants.
> (2) Any loss, cost or expense arising out of any governmental direction or request that the **named insured** test for, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants.
>
> Subparagraph (1) above does not apply to **bodily injury** or **property damage** caused by heat, smoke or fumes from a hostile fire. As used in this exclusion, a hostile fire means one which becomes uncontrollable, or breaks out from where it was intended to be.
>
> Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or disclaimed.

(*See* Group Exhibit B to Amended Complaint, at No. CLP 2 269 224.) The 1998 and 1999 versions of the policy contained a slightly different pollution exclusion:

> (1) Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged, or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time.
> [. . .]
> (2) Any loss, cost, or expense arising out of any:
> (a) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the affects of pollutants.
> [. . .]

(*See* Group Exhibit B to Amended Complaint, at No. CLP 2 304 023.)

Monument Well also purchased umbrella policies from Bituminous, with policy

periods from 10/19/96 through 3/19/00. The pollution exclusion provision under the umbrella policies effective from 10/19/96 through 3/19/98 provided:

> It is agreed that this policy does not apply to:
> A: to any liability for "bodily injury," "property damage" or "personal injury" arising out of the actual, alleged, or threatened discharge, dispersal, release or escape of "pollutants."
> B. to any loss, cost or expense arising out of any request or order that the "insured" test for, monitor, clean up, remove, contain, treat, detoxify or neutralize "pollutants."
> C. to any obligation of the "insured" to indemnify or contribute to any party because of "bodily injury," "property damage" or "personal injury" and seeking damages for "bodily injury," "property damage" or "personal injury" arising out of the actual, alleged or threatened discharge, dispersal, release or escape of "pollutants."
> D. to any obligation to defend any "suit" or "claim" against any "insured" alleging "bodily injury," "property damage" or "personal injury" and seeking damages for "bodily injury," "property damage" or "personal injury" arising out of the actual, alleged, or threatened discharge, dispersal, release or escape of pollutants.

(Group Exhibit C to Amended Complaint, at No. CUP 857 248, 857 374.) The pollution exclusion in the umbrella policies effective from 2/19/98 through 3/19/00 provides:

> It is agreed that this policy does not apply to:
> (1) "Bodily injury," "property damage" or "personal injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release, or escape of pollutants; or
> (2) Any loss, cost, or expense arising out of any:
> (a) request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants;
> [. . . .]

(Group Exhibit C to Amended Complaint, at No. CUP 522 664, & 526 082.)

Finally, Bituminous issued a "pollution liability" policy to Monument Well, which was effective June 24, 1999 through March 19, 2000. The pollution liability policy

-5-

contains a retroactive date provision which provides that "Section I of this insurance does not apply to "bodily injury" or "property damage" caused by a "pollution incident" that commences prior to the Retroactive Date, if any shown here: 6-24-99." (Pollution Liability Policy.) The policy defines "pollution incident" to mean

> emission, discharge, release or escape of 'pollutants' into or upon land, the atmosphere, or any watercourse or body of water, provided that such emission, discharge, release or escape results in 'environmental damage.' The entirety of any such emission, discharge, release or escape shall be deemed to be one 'pollution incident.'

(*Id.*)

In this case, Bituminous has moved for summary judgment on Count One of the Amended Complaint based on the policy exclusions in the primary and umbrella insurance policies. Bituminous also seeks summary judgment on Count Two based on the inapplicability of the pollution liability insurance policy. (Pls. Mot. for Summ. J. ¶¶ 1-2.) If I grant summary judgment in favor of Bituminous on the first two counts, then Bituminous has also moved for summary judgment on Count Four of the Amended Complaint, alleging that under Colorado law it is entitled to recoup the defense costs and expenses it incurred in the course of defending Monument Well in the Underlying Lawsuit. (Pls. Mot. for Summ. J. ¶ 3.)

III.  ANALYSIS

    A.  Standard of Review

Summary judgment may be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the . . . moving party is entitled to

judgment as a matter of law." FED. R. CIV. P. 56(c).

The burden of showing that no genuine issue of material fact exists is borne by the moving party. *E.E.O.C. v. Horizon/ MS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir. 2000). Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter. *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994). The nonmoving party may not rest solely on the allegations in the pleadings, but must instead bring forward "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553 (1986).

In reviewing a summary judgment motion, the court must view the evidence in the light most favorable to the nonmoving party. *Anaya v. Crossroads Managed Care Systems, Inc.*, 195 F.3d 584, 590 (10th Cir. 1999). All doubts must be resolved in favor of the existence of triable issues of fact. *Boren v. Southwestern Bell Tel. Co.*, 933 F.2d 891, 892 (10th Cir. 1991).

      B.    <u>Standard for Determining Whether a Duty to Defend Exists</u>

As this is a diversity case, the Court must apply the substantive law of the forum state. *Blackhawk-Central City Sanitation Dist. v. American Guaranty & Liability Ins. Co.*, 214 F.3d 1183, 1188 (10th Cir. 2000). The parties agree that the law of Colorado should govern the Court's interpretation of the underlying claims and the insurance policies involved. Thus, I will apply the most recent statement of Colorado law by the Colorado Supreme Court. *Id.* (citing *Wood v. Eli Lilly & Co.*, 38 F.3d 510, 513 (10th Cir. 1994)).

Under Colorado law, an insurer's duty to defend arises when allegations in the underlying complaint might fall within the coverage of the policy, "even if allegations only 'potentially or arguably' fall within the policies coverage." *Thompson v. Md. Casualty. Co.*, 84 P.3d 496 (Colo. 2004)(en banc) (citing *Hecla Mining Co. v. N.H. Ins. Co.*, 811 P.2d 1083, 1089 (Colo. 1991)). "An insurer seeking to avoid its duty to defend bears a heavy burden." *Id.* (quoting *Cyprus Amax Mineral Co. v. Lexington Ins. Co.,* 74 P.3d 294, 297 (Colo. 2003)). The duty to defend must be construed "liberally with a view toward affording the greatest possible protection to the insured." *Id.*

"The insurer has a duty to defend unless the insurer can establish that the allegations in the complaint are solely and entirely within the exclusions of the insurance policy." *Hecla Mining Co.*, 811 P.2d at 1090. "If the underlying complaint asserts more than one claim, a duty to defend against all claims arises if any one of them is arguably a risk covered by the pertinent policy." *Blackhawk-Central City Sanitation Dist.*, 214 F.3d at 1189 (citing *Fire Ins. Exch. v. Bentley*, 953 P.2d 1297, 1300 (Colo. App. 1998). Thus, if any one of the four claims in the underlying lawsuit is arguably covered by one of the insurance policies, then Bituminous has a duty to defend on all claims in the underlying lawsuit.

At the outset, then, it is important to note that although the parties dispute whether or not the first three claims in the underlying lawsuit are brought against Defendant Monument Well, if the fourth claim for relief arguably falls within the policy coverage, then Bituminous will have a duty to defend Monument Well against all of the claims in the underlying lawsuit. Because the underlying Complaint appears to

implicate Monument Well in all four claims for relief, I will address whether the policies cover those claims as well.

C.     The Primary and Umbrella Policies as to the First Three Mobaldi Claims

On their face, the first three claims for relief, if alleged against Monument Well, appear to clearly fall within the pollution exclusion provisions of the Primary Policies and the first two Umbrella Policies issued to Monument Well.  However, the provisions in the two most recent Umbrella Policies differ significantly from the first two Umbrella Policies.

The Defendant raises the argument in its response that 'to the extent the Mobaldi Plaintiffs seek any damages from Monument Well, such damages are more akin to contribution or indemnity for the harm caused by another party than damages for harm caused by Monument Well itself." (Def. Resp. to Mot. for Summ. J. at 12.) Though the Defendants do not specifically raise this point, the Court has noticed that the Umbrella Policy that was in effect through March 19, 1998 specifically included language excluding liability from "any obligation of the insured to indemnify or contribute to any party because of bodily injury, property damage or personal injury and seeking damages for bodily injury, property damage or personal injury arising out of the actual, alleged or threatened discharge, dispersal, release or escape of pollutants." (*See* Umbrella Policy No. 1 857 374 at ¶ D.)  The pollution exclusions in the two most recent Umbrella Policies do not contain any such language, leaving room to support Monument Well's argument that an obligation to indemnify would not fall within the Policy Exclusion.  Thus, I find that there is a genuine issue of material fact as to

whether the first three claims in the underlying suit fall squarely under the pollution exclusions of the most recent Umbrella Policies.

> D. <u>Primary and Umbrella Policies as to the Negligent Misrepresentation Claim</u>

The Defendant argues that the pollution exclusion in the Primary and Umbrella Policies does not apply to the Plaintiff's Negligent Misrepresentation Claim. In response, Plaintiff relies on several cases from other jurisdictions which generally tend to hold that absolute or total pollution exclusion provisions bar coverage for all claims arising out of the alleged release of pollutants, regardless of the legal theory upon which recovery is sought. (*See* Pls. Reply in Support of Mot. for Summ. J. at 6 (relying on *Danis v. Great Am. Ins. Co.,* 823 N.E.2d 59, 69 (Ohio Ct. App. 2004); *Stull v. American States Ins. Co.*, 963 F. Supp. 492, 494 (D.D. 1997); and *East Quincy Serve. Dist. v. Continental Ins. Co.*, 864 F. Supp. 976, 978, 982 (OUTCALL. 1994)).

As an initial matter, I reiterate that in this diversity case, the law of the forum state, Colorado, governs the dispute in this case. *See Blackhawk-Central City Sanitation Dist.*, 214 F.3d at 1188. Plaintiff has cited no Colorado case holding that a negligent misrepresentation claim falls directly within a total or absolute pollution exclusion provision in an insurance policy. Furthermore, the cases relied upon by the Defendant provide no rationale or discussion on the issue. Each case seems to hold in a conclusory manner that under the law of each respective jurisdiction, and based on the facts alleged in each respective complaint, the respective pollution exclusion provisions at issue excluded coverage for negligent misrepresentation claims arising

-10-

out of the actual, threatened, or alleged discharge of pollutants. I find these cases unpersuasive.

To establish a duty to defend, the insured only needs to demonstrate the existence of an arguable potential for coverage. To avoid its duty to defend, the Insurer must prove that the underlying claim cannot fall within the coverage provided by the policy. *See generally*, *Hecla Mining*, 811 P.2d at 1089. Bituminous has not met its burden to show that it is entitled to summary judgment as a matter of law. There is a genuine material issue as to whether the negligent representation claim falls within the pollution exclusion provisions in the Primary and Umbrella insurance policies issued by Bituminous to Monument Well. Therefore, I find that summary judgment is inappropriate.

    E. <u>The Issue of Whether Bituminous Owes a Duty to Indemnify is Not Ripe</u>.

I agree with the Defendant that the issue of whether Bituminous owes Monument Well a duty to indemnify is not ripe for review because the duty to indemnify cannot be determined until the actual liability for the insured has been adjudicated. *See Globe Indem. Co. v. Travelers Indem. Co. of Illinois*, 98 P.3d 971, 976 (Colo. App. 2004). Therefore, summary judgement on that issue is denied.

    F. <u>The Issue of Whether Bituminous is Entitled to Recoup Costs is Not Ripe</u>

Since I denied summary judgment on Count I of the Amended Complaint, the issue of whether Bituminous is entitled to recoup costs is not ripe. Therefore, summary judgement on that issue is denied.

IV.     CONCLUSION

Based on the foregoing, it is

ORDERED that Plaintiff's Motion for Summary Judgment (docket #22), filed April 6, 2007 is **DENIED**.

Dated:  March 31, 2008

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
U. S. District Judge